UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

LANCE ELY,                          :

                  Petitioner,    :    09 Civ. 5836 (RA)(HBP)

     -against-                      :    REPORT AND
                                         RECOMMENDATION
JOHN B. LEMPKE,                     :

                  Respondent.    :

----------------------------------X


          PITMAN, United States Magistrate Judge:


          TO THE HONORABLE RONNIE ABRAMS, United States District

Judge,


I.  Introduction


          Petitioner Lance Ely seeks, by his pro se petition for

a writ of habeas corpus pursuant to 28 U.S.C. § 2254, an Order

vacating a judgment of conviction imposed on November 27, 2003

after a jury trial, by the Supreme Court of the State of New

York, New York County (Grella, J.), for one count of burglary in

the second degree, in violation of New York Penal Law Section

140.25(2) (Petition for a Writ of Habeas Corpus, filed Jun. 25,

2009 (Docket Item 2)("Petition") at 1).  Pursuant to that

judgment, petitioner was sentenced as a persistent violent felony

offender to a indeterminate term of imprisonment of twenty years

to life.  Petitioner is currently incarcerated pursuant to that judgment.

For the reasons set forth below, I respectfully recommend that the petition be denied.

II.  Facts

A.  Facts Giving Rise to Petitioner's Conviction

Petitioner's conviction arises from a burglary that took place in March 2003.  The evidence offered at trial established the following facts.

On March 28, 2003, Donna Bubash resided in a fifth-floor apartment located in lower Manhattan (Tr.[1]  27).  At approximately 2:00 p.m., Bubash came out of the bathroom of her apartment and discovered petitioner in her bedroom, holding her purse (Tr. 28-29).  Bubash asked petitioner to identify who he was and why he was there, and he replied that he was a messenger (Tr. 29).  Upon further inquiry, however, petitioner asked Bubash to let him leave, promising not to "do this again" (Tr. 32).  Bubash took her purse back from petitioner, and escorted him out of her apartment (Tr. 30-31).  Petitioner was detained by

---

[1] "Tr." refers to the trial transcript.

2

construction workers from a neighboring apartment until the
police arrived (Tr. 36-37, 111-12, 120).  In petitioner's
shoulder bag, the police found a screwdriver and an employee
identification card from a messenger service for which petitioner
had formerly worked (Tr. 113-16, 122-23).

Petitioner was charged with burglary in the second
degree possession of burglar's tools in violation of New York
Penal Law Sections 140.25(2) and 140.35, respectively (Petition
1; Memorandum of Law in Opposition to the Petition for a Writ of
Habeas Corpus, filed Dec. 14, 2009 (Docket Item 7)("Opp'n Memo.")
at 2).

B.   Trial Court Proceedings

Petitioner's trial began on September 15, 2003 (Tr. 1).
The prosecution's case largely consisted of testimony
establishing the foregoing events.  Petitioner presented no
evidence is his defense (Tr. 196-97).

The jury found petitioner guilty of burglary in the
second degree (Tr. 308).[2]

---

[2] The possession of burglar's tools charge was dismissed on
defendant's motion prior to summations (Tr. 212-13).

On November 17, 2003, petitioner appeared for sentencing (S. Tr.[3] 1).  The prosecutor submitted a statement that petitioner had been previously convicted of two or more felonies (S. Tr. 2-3).  Petitioner did not dispute his prior felony convictions, arguing instead that the sentencing proceeding was illegal under Apprendi v. New Jersey, 530 U.S. 466 (2000), because the Court was relying on information not presented to the jury in determining his sentence (S. Tr. 3-4). The Court, rejecting petitioner's arguments, determined that petitioner was a persistent violent felony offender and sentenced him to an indeterminate term of twenty years to life (S. Tr. 14-16).

C.   Post-Conviction Proceedings

   1.   Direct Appeal

Petitioner, assisted by counsel, appealed his conviction to the Appellate Division of the Supreme Court for the First Department.  Petitioner asserted three claims on appeal:

   1.   Appellant was denied his due process right to a fair
        trial by the prosecutor's pervasive misconduct in (a)
        mischaracterizing the defense, vouching for the
        People's witness, and expressing his personal belief in
        appellant's guilt; (b) introducing testimony tending to

---

[3]   "S. Tr." refers to the sentencing transcript.

establish appellant's propensity to commit burglary and
exploiting it during his summation.  U.S. Const. Amend.
XIV; N.Y.S. Const. Art I, § 6.

2.    Appellant's sentence of twenty years to life
      imprisonment as a persistent violent felon pursuant to
      P.L. § 70.08 and C.P.L. § 400.16 violated his rights to
      notice of the charges against him, to a jury trial and
      to due process of law, as the enhanced sentence was
      premised upon the existence of two violent predicate
      convictions, were the existence of the prior
      convictions was neither submitted to a jury not
      contained in an indictment.  U.S. Const. Amends. VI &
      XIV; N.Y. Const., Art 1, §§ 2, 6, Art. VI, § 18;
      Apprendi v. New Jersey, 530 U.S. 466 (2000).

3.    In light of appellant's tragic family history and his
      failure to cause anyone physical harm during the
      commission of a crime, appellant's sentence of 20 years
      of life is excessive.

(Brief for Defendant-Appellant, dated April 2006 ("Pet. App.

Br."), annexed as Exhibit A to Declaration in Opposition to the

Writ of Habeas Corpus, filed Dec. 14, 2009 (Docket Item 8)

("Opp'n Decl.") at 2).

      The Appellate Division affirmed petitioner's conviction

on November 27, 2007, stating, in pertinent part:

      The court properly exercised its discretion in
      denying defendant's mistrial motion, made on the ground
      that a portion of the prosecutor's summation shifted
      the burden of proof.  The remarks in question were
      responsive to defendant's summation and did not mislead
      the jury as to the appropriate burden of proof.  As to
      defendant's remaining summation claims, and his related
      evidentiary argument, there was nothing in the
      prosecutor's conduct that was so egregious as to
      warrant reversal (see People v Overlee, 236 AD2d 133
      [1997], lv denied 91 NY2d 976 [1998];  People v

> D'Alessandro, 184 AD2d 114, 118-119 [1992], lv denied
> 81 NY2d 884 [1993]).
>
> Defendant's constitutional challenge to the
> procedure under which he was adjudicated a persistent
> violent felony offender is without merit (see
> Almendarez-Torres v United States, 523 US 224 [1998]).
> We perceive no basis for reducing the sentence.

People v. Ely, 45 A.D.3d 466, 466, 845 N.Y.S.2d 734, 734 (2007).

Petitioner, again assisted by counsel, sought leave to

appeal to the New York Court of Appeals (Letter to the Honorable

Judith S. Kaye, dated Dec. 7, 2007, annexed as Exhibit D to Opp'n

Decl., at 1).  The Court of Appeals denied petitioner's

application without opinion on March 26, 2008.  People v. Ely, 10

N.Y.3d 810, 886 N.E.2d 809, 857 N.Y.S.2d 44 (2008).


      2.   Motion to
         Vacate and Motion
         to Re-sentence


By a pro se motion dated August 13, 2007, filed in New

York Supreme Court, petitioner sought to vacate the judgment of

the Trial Court pursuant to New York Criminal Procedure Law

Sections 440.10 and 440.30 (Notice of Motion to Vacate Judgment

Pursuant to CPL § 440.10 & 440.30, dated Aug. 13, 2007 ("Pet.

Mot. to Vacate"), annexed as Exhibit F to Opp'n Decl., at 1).

Petitioner articulated his claims in this motion as follows:

> (i)   no probable cause was shown during the preliminary
>       hearing concerning justification for continued

incarceration due to a lack of prima facie evidence [sic] (CPL § 140.30[4] & CPL § 70.10[1][2]; and CPL § 190.30;

(ii) the Prosecutor as a matter of law did not have legal control and jurisdiction over a "bona fide" "Complainant Affiant" claiming to be a victim as required by section 37-a, and 39 of the General Construction Law;

(iii) that as a result of the prosecution willfully and knowingly making a direct presentation before the grand jury with less than hearsay information which could not be corroborated as required, and such evidence having no probative value the Grand Jury Proceedings are defective and [l]egally inadequate as a matter of law to sustain a vote to indict. See CPL 210.35(5); and 70.10[1]; and

(iv) the Prosecutor committed prosecutorial misconduct in violation of their code of Ethics and defendant right of access to section 440.10, and 440.30 [sic];

(v) and the court's imposed surcharge must be made null and void when no record exist[s] to substantiate any victim or gain from the commission of a crime [sic] the defendant is alleged to have benefit from in absence of a required hearing [sic] (CPL § 400.40[1]), and remission of any imposed fine, restitution, reparation or surcharge must be adjusted accordance with section 430.20, subd. (2).

(Pet. Mot. to Vacate at 2).

In a separate motion, dated August 16, 2007 and also filed in New York Supreme Court, petitioner sought re-sentencing pursuant to New York Criminal Procedure Law Sections 420.30(2) and 420.10(1) (Notice of Motion for Re-Sentence Pursuant to CPL § 420.30(2), dated Aug. 16, 2007 ("Pet. Mot. to Re-sentence"),

7

annexed as Exhibit G to Opp'n Decl., at 1).  Petitioner re-
alleged the fifth ground from his motion to vacate, namely, that
the imposition of a mandatory surcharge of $210.00 without an
administrative hearing was an error, and requested that the
surcharge be remitted back to him (Pet. Mot. to Re-sentence at
1).

     In a decision dated February 15, 2008, the Supreme
Court (Pickholz, J.) denied petitioner's motion to remit the
mandatory surcharge and crime assistance fee of $210.00, holding
that it was not a "fine" for purposes of New York Criminal
Procedure Law Section 400.30 and, thus, no hearing was required
(Decision, dated Feb. 15, 2008, annexed as Exhibit I to Opp'n
Decl., at 1-2).  In a separate decision dated February 28, 2008,
the Supreme Court (Pickholz, J.) denied the remainder of the
claims raised in petitioner's motion to vacate because petitioner
"could have raised each of these claims upon appeal, as they are
apparent from the face of the record" (Decision, dated Feb. 28,
2008, annexed as Exhibit H to Opp'n Decl., at 3).  Alternatively,
the Court denied the claims as meritless (Decision, dated Feb.
28, 2008, annexed as Exhibit H to Opp'n Decl., at 4).

     Petitioner's application for leave to appeal from these
two decisions was denied by the Appellate Division without
opinion on July 1, 2008.  People v. Ely, 2008 N.Y. Slip. Op.

76499(U) (1st Dep't July 1, 2008).  On August 28, 2008, the Court

of Appeals denied petitioner's application for leave to appeal

from the Appellate Divisions's decisions.  People v. Ely, 11

N.Y.3d 736, 894 N.E.2d 658, 864 N.Y.S.2d 394 (2008).

          3.   Writ of Error
              Coram Nobis

On June 26, 2009, petitioner filed a pro se petition

for a writ of error coram nobis in the Appellate Division, First

Department (Notice of Application for Writ of Error Coram Nobis,

dated June 19, 2009, annexed as Exhibit N to Opp'n Decl., at 1).

Petitioner alleged that his appellate counsel was ineffective for

neglecting to raise three issues: (1) the failure to remove a

juror who had demonstrated a "strong bias" against petitioner by

"making faces and expressing other behaviors indicative of bias,"

(2) the Trial Court's refusal to entertain petitioner's arguments

about why he wanted to replace his trial counsel, and (3) that

the failure of the prosecution to disclose fingerprint reports

from the crime scene violated its obligations under People v.

Rosario, 9 N.Y.2d 286, 290-91, 213 N.Y.S.2d 448, 173 N.E.2d 881

(1961) and Brady v. Maryland, 373 U.S. 83 (1963) (Memorandum of

Law in Support of Writ of Error Coram Nobis ("Coram Nobis

Memo."), dated June 19, 2009, annexed as Exhibit N to Opp'n

Decl., at 2-7).  On October 29, 2009, the Appellate Division denied the petition without opinion.  People v. Ely, 2009 N.Y. Slip. Op. 87159(U) (1st Dep't Oct. 29, 2009).  The Court of Appeals denied leave to appeal on January 21, 2010.  People v. Ely, 13 N.Y.3d 940, 922 N.E.2d 919, 895 N.Y.S.2d 330 (2010).

D.   The Pending Petition

Petitioner, proceeding pro se, filed the pending petition on June 25, 2009, asserting claims drawn from both his appellate brief and his motion to vacate (Petition 7-8). Petitioner argued that (1) he was denied the due process right to fair trial by prosecutorial misconduct; (2) his sentence as a persistent violent felony offender violated the Sixth Amendment under Apprendi; (3) his sentence was excessive due to his "tragic family history" and failure to cause anyone physical harm during a crime; (4) no probable cause was shown during the preliminary hearing determining whether his continued incarceration was justified; (5) the prosecutor did not have control over a "bona fide complainant affiant"; (6) the prosecution "committed prosecutorial misconduct in violation of their code of ethics and defendant [sic] right of access to section §440.10 & 440.30"; and (7) the mandatory surcharge of $210.00 imposed at sentencing was improper (Petition 7-8).

10

In a motion dated November 20, 2009, petitioner moved to "stay and/or amend" his petition to assert several new claims, chief among them a claim that his rights under the Confrontation Clause of the Sixth Amendment were violated by the prosecution's failure to call two members of the New York Police Department's ("NYPD") Evidence Collection Team as witnesses to testify about fingerprint analysis conducted at the crime scene (Notice of Motion for Stay and/or Amend Petition Under Fed. R. Civ. Proc. 15(a), filed Nov. 25, 2009 (Docket Item 6)("Pet. Mot. to Amend") at 5).   Petitioner argued that in light of Melendez-Diaz v. Massachusetts, 557 U.S. 305 (2009), a Confontation Clause case decided after his original petition was filed that petitioner claimed "established a clarification of constitutional law that applies retroactively," a stay of the habeas proceedings was warranted to allow for the exhaustion of the claim in state court (Memorandum of Law in Support of Pet. Mot. to Amend, filed Nov. 25, 2009 (Docket Item 6)("Pet. Mot. To Amend Mem.") at 1-2).

Petitioner also sought to amend his habeas corpus petition to include several additional claims, including (1) an allegation of juror misconduct in violation of New York Criminal Procedure Law Section 270.35; (2) a claim that the Trial Court improperly disregarded his desire for new counsel; (3) a claim that the prosecution committed Rosario and Brady violations that

11

were "entwined" with the Confrontation Clause claim; (4) a
reiteration of the claim that his sentence as a persistent
violent felony offender violated the Sixth Amendment, and (5) a
claim that his sentence violated the Eighth Amendment and "recent
public policy consideration[s]" (Pet. Mot. to Amend at 6-7).
Respondent opposed petitioner's motion on December 16, 2009
(Docket Item 10).

On April 16, 2010, respondent submitted a letter
application requesting that the decision on petitioner's habeas
corpus petition be held in abeyance in light of the New York
Attorney General's plan to seek rehearing en banc of the Second
Circuit's decision in Besser v. Walsh, 601 F.3d 163 (2d Cir.
2010), which held that New York's persistent felony offender
statute ("PFO Statute"), the statute under which petitioner was
sentenced, was unconstitutional under the Sixth Amendment (Letter
from Respondent, dated Apr. 15, 2010 (undocketed), at 1-2).  On
April 22, 2010, I granted respondent's application to hold the
matter in abeyance "pending the resolution of the petition for
rehearing en banc" of the Besser decision (Docket Item 11).

On April 30, 2010, the Second Circuit granted en banc
review of the Besser decision.

On September 13, 2010, the Honorable Paul A. Crotty, United States District Judge, to whom this matter was then assigned, issued an Order, which stated, in pertinent part:

> In light of the memo-endorsement issued by Magistrate Judge Henry Pitman April 22, 2010, the Clerk of Court is directed to terminate the Petitioner's motion (document #6) to stay and/or motion to correct the Petition under FRCP 15(a).  The motion is subject to reinstatement pending the resolution of the petition for rehearing en banc of the decision in Besser v. Walsh, Docket No. 07-1599pr.

(Docket Item 12).

On October 21, 2010, in Portalatin v. Graham, 624 F.3d 69, 94 (2d Cir. 2010)(en banc), cert. denied, 131 S.Ct. 1691 (2011), the Second Circuit vacated the panel opinion in Besser, and held that the New York PFO Statute was constitutional.

Petitioner never moved to reinstate his motion to stay and/or amend after the petition for rehearing en banc was resolved, in accordance with Judge Crotty's September 13, 2010 Order.  Thus, the claims described therein have been abdandoned.  Nevertheless, due to petitioner's pro se status, the absence of prejudice to respondent, and in the interest of completeness, I shall address all of petitioner's claims below.

III.  <u>Analysis</u>

    A.  Standard of
        <u>Review</u>

     Before a federal court can issue a writ of habeas
corpus, a petitioner must overcome a "difficult to meet[] . . .
and highly deferential standard for evaluating state-court
rulings, which demands that state-court decisions be given the
benefit of the doubt."  <u>Cullen v. Pinholster</u>, --- U.S. ---, ---,
131 S.Ct. 1388, 1398 (2011)(citations and internal quotation
marks omitted).  Specifically, habeas relief may be granted only
when the state court's decision:

> (1) resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly estab-
> lished Federal law, as determined by the Supreme Court
> of the United States; or

28 U.S.C. § 2254(d).

     The Supreme Court has explained the alternative
standards set forth in subparagraph one as follows:

>   First, we have explained that a decision by a
> state court is "contrary to" our clearly established
> law if it "applies a rule that contradicts the govern-
> ing law set forth in our cases" or if it "confronts a
> set of facts that are materially indistinguishable from
> a decision of this Court and nevertheless arrives at a
> result different from our precedent."  <u>Williams v.
> Taylor</u>, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 146
> L.Ed.2d 389 (2000).  See also <u>Early v. Packer</u>, 537 U.S.

3, 7-8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (<u>per</u> <u>curiam</u>). . . .

Second, [petitioner] can satisfy § 2254(d) if he can demonstrate that the [State] Court's decision involved an "unreasonable application" of clearly established law.  As we have explained:

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.  See <u>Bell v. Cone</u>, 535 U.S. 685, 698-699, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); <u>Williams</u>, <u>supra</u>, at 411, 120 S.Ct. 1495.  Rather, it is the habeas applicant's burden to show that the state court applied [that case] to the facts of his case in an objectively unreasonable manner." <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24-25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (<u>per</u> <u>curiam</u>).

<u>Price v. Vincent</u>, 538 U.S. 634, 640-41 (2003); <u>accord</u> <u>Waddington v. Sarausad</u>, 555 U.S. 179, 190 (2009); <u>Brown v. Payton</u>, 544 U.S. 133, 141 (2005); <u>see also</u> <u>Lockyer v. Andrade</u>, 538 U.S. 63, 70-72 (2003); <u>Bierenbaum v. Graham</u>, 607 F.3d 36, 47-48 (2d Cir. 2010); <u>Hoi Man Yung v. Walker</u>, 468 F.3d 169, 176 (2d Cir. 2006); <u>Hawkins v. Costello</u>, 460 F.3d 238, 242-43 (2d Cir. 2006); <u>Brown v. Artuz</u>, 283 F.3d 492, 500-01 (2d Cir. 2002).

In addition to the definition of "unreasonable application" set forth above, a state court may unreasonably apply Supreme Court precedent "if the state court unreasonably extends a legal rule established by the Supreme Court or if it unreasonably fails to extend a legal rule to a context in which the rule

15

reasonably should apply." Serrano v. Fischer, 412 F.3d 292, 296-97 (2d Cir. 2005). "Unreasonableness is determined by an 'objective' standard." Gersten v. Senkowski, 426 F.3d 588, 607 (2d Cir. 2005), quoting Williams v. Taylor, 529 U.S. 362, 409 (2000); Hawkins v. Costello, supra, 460 F.3d at 242-43.

Both the "contrary to" and "unreasonable application" clauses "restrict[] the source of clearly established law to [the Supreme] Court's jurisprudence." Williams v. Taylor, supra, 529 U.S. at 412; accord Parker v. Matthews, --- U.S. ---, ---, 132 S.Ct. 2148, 2155-56 (2012). "[C]learly established [f]ederal law . . . refers to the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the relevant state-court decision." Carey v. Musladin, 549 U.S. 70, 74 (2006) (internal quotation marks omitted); accord Thaler v. Haynes, --- U.S. ---, ---, 130 S.Ct. 1171, 1173 (2010) ("A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of this Court."); see Greene v. Fisher, 132 S.Ct 38, 44 (2011). "That federal law, as defined by the Supreme Court, may be either a generalized standard enunciated in the [Supreme] Court's case law or a bright-line rule designed to effectuate such a standard in a particular context." Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir. 2002); accord Davis v. Grant, 532 F.3d 132, 140 (2d Cir. 2008). "A petitioner can not win

habeas relief solely by demonstrating that the state court unreasonably applied Second Circuit precedent." Yung v. Walker, 341 F.3d 104, 110 (2d Cir. 2003); accord DelValle v. Armstrong, 306 F.3d 1197, 1200 (2d Cir. 2002).

A ruling that is clearly erroneous is not necessarily a ruling that constitutes an unreasonable application of federal law. Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (The "objectively unreasonable" and "clear error" standards "are not the same. The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Davis v. Grant, 532 F.3d 132, 140 (2d Cir. 2008); Cotto v. Herbert, 331 F.3d 217, 248 (2d Cir. 2003). However, "'the increment [of error beyond clear error] need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.'" Brisco v. Ercole, 565 F.3d 80, 88 (2d Cir. 2009), quoting Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000).

To be entitled to the deferential standard of review under either sub-paragraph of subsection 2254(d), the state courts must have resolved the petitioner's claims "on the merits." Cotto v. Herbert, supra, 331 F.3d at 230; see also Ryan v. Miller, 303 F.3d 231, 245 (2d Cir. 2002) ("[I]n order for this deferential standard of § 2254 to apply, we must first determine

17

that the state court considered [petitioner's claim] on its merits."); Sellan v. Kuhlman, 261 F.3d 303, 309-10 (2d Cir. 2001).

The Second Circuit has instructed habeas courts to "classify" a state court decision as either:  (1) "fairly appearing to rest primarily on federal law or to be interwoven with federal law"; or (2) "fairly appearing to rest primarily on state procedural law." Jimenez v. Walker, 458 F.3d 130, 145 (2d Cir. 2006).  "If the state court's decision falls into the first category, and does not 'contain a clear statement of reliance on a state procedural bar,' the decision must be treated as having been made on the merits." Mateo v. Fishkill Corr. Fac., No. CV-04-3420 (DGT), 2007 WL 2362205 at *5 (E.D.N.Y. Aug. 14, 2007), quoting Jimenez v. Walker, supra, 458 F.3d at 138.  To make this classification, courts in this circuit examine "(1) the face of the state-court opinion, (2) whether the state court was aware of a procedural bar, and (3) the practice of state courts in similar circumstances." Jimenez v. Walker, supra, 458 F.3d at 145 n.16.

Here, upon examining these three factors, I conclude that the Appellate Division adjudicated the merits of petitioner's prosecutorial misconduct claim when it found that "[t]he court properly exercised its discretion in denying defendant's mistrial motion, made on the ground that a portion of the prose-

cutor's summation shifted the burden of proof," and that as to
"defendant's remaining summation claims, and his related eviden-
tiary argument, there was nothing in the prosecutor's conduct
that was so egregious as to warrant reversal." People v. Ely,
supra, 45 A.D.3d at 466, 845 N.Y.S.2d at 734. Although the
language is slightly conclusory, it does address the substance of
petitioner's claim and does not remotely suggest that the deci-
sion rests on a procedural basis. My conclusion is not altered
by the fact that the Appellate Division did not explicitly refer
to the Fourteenth Amendment, or relevant federal case law. See
Sellan v. Kuhlman, supra, 261 F.3d at 312 (noting that a state
court decision may be deemed on the merits "even if the state
court does not explicitly refer to . . . relevant federal case
law"); Cheng Kang Shi v. Connolly, 06 CV 2093 (NG)(RLM), 2007 WL
4380276 at *6 (E.D.N.Y. Dec. 13, 2007) ("AEDPA's deferential
standard of review applies even if the state court did not
explicitly refer to either the federal claim or to relevant
federal case law.")(internal quotation marks omitted). I also
conclude that the Appellate Division adjudicated the merits of
petitioner's Apprendi claim when it found that "Defendant's
constitutional challenge to the procedure under which he was
adjudicated a persistent violent felony offender is without
merit," and cited relevant federal case law. People v. Ely,

supra, 45 A.D.3d at 466, 845 N.Y.S.2d at 734, citing

Almendarez-Torres v. United States, 523 US 224 (1998).

Because the Appellate Division adjudicated petitioner's

prosecutorial misconduct claim and Apprendi claim on the merits,

the Appellate Division's decision on this claims are entitled to

the deferential standard of review set forth in 28 U.S.C. §

2254(d).

        1.   Prosecutorial
             Misconduct Claim[4]

Petitioner first asserts that misconduct by the

prosecutor violated his Due Process right to a fair trial (Peti-

tion 7; Pet. App. Br. at 34-50).  Specifically, petitioner claims

that during summation, the prosecution mischaracterized the

defense and shifted the burden of proof by stating that defense

counsel had conceded that petitioner was knowingly and unlawfully

in Bubash's apartment:

        [PEOPLE]:  You see burglary in the second degree has
        elements and I am required to prove those elements to
        you beyond a reasonable doubt.

        I am not going to instruct you on them.  I am just
        going to go through them one by one. That's the law.
        That's where I choose to start.  So I have to prove
        first of all, that the [petitioner] knowingly and

---

        [4] Respondent concedes that petitioner's prosecutorial
misconduct claim is exhausted (Opp'n Memo. at 19).

20

unlawfully entered a dwelling, all right.  That's a
non-issue, all right.

[DEFENSE]:  Objection.

THE COURT:  Overruled.

[PEOPLE]:  No question that apartment 5-C is a dwell-
ing.  That's where Ms. Donna Bubash makes her resi-
dence.  That's where Eve Gardner makes her residence.
That's where they live and that's where they work.

    No question that the entry to the apartment was
unlawful.  Ms. Bubash sat up there and told you that he
didn't have permission or authority to.

[DEFENSE]:  Objection, judge.

THE COURT:  It's argument.  But ultimately, it's going
to be there jury's decision as to what the facts are.

[PEOPLE]:  It's conceded by the defense that the
[petitioner] was in the apartment.  So again, there is
no question that he entered the apartment and entered
sort of understates what he did.

(Tr. 244-45; Petition 7).

    Petitioner also argues that the prosecution "deni-

grated" defense counsel by commenting negatively on his emphasis

in summation on testimonial inconsistencies.  Petitioner cites

the following portion of the prosecution's summation in support

of this argument:

    [PEOPLE]:  Inconsistencies among witnesses. [Defense
    counsel] made a lot of that and allow me to address it.
    This case does not turn on whether Donna Bubash had a
    towel around her head; had a towel around her body.  It
    doesn't turn on whether Eve Gardner let the police up;
    doesn't turn on whether how many people were situated

> in the lobby; how many construction workers those are .
> . . .
>
>     The arguments about inconsistencies are really
> designed to take your focus away from what really went
> on inside of the apartment . . . .

(Tr. 255-56; Petition 7).

Petitioner next cites the following passage and argues

that the prosecution improperly vouched for the credibility of

Bubash by stating that in order to acquit defendant, the jury

would have to believe that Bubash was lying:

> [PEOPLE]:  And here is what's really the heart and meat
> of this case: For you to find the [petitioner] not
> guilty in this case, you have to believe that Donna
> Bubash is lying.
>
> [DEFENSE]:  Objection.
>
> [PEOPLE]:  Not mistaken.
>
> [DEFENSE]:  Objection.
>
> THE COURT:  Overruled.

(Tr. 257; Petition 7).

Relying on the following comments, petitioner then

argues that the prosecutor expressed a personal belief in peti-

tioner's guilt:

> [PEOPLE]: [Petitioner] has got a right to a fair trial
> and he got a fair trial.
>
> [DEFENSE]: Objection, judge.
>
> THE COURT: Overruled.

22

> [PEOPLE]: Fair trial also -- with a fair trial also
> comes a fair verdict, a verdict means the truth and the
> truth in this case is that this man is guilty of bur-
> glary in the second degree and you should find him so.
>
> Thank you.

(Tr. 260-61; Petition 7).

Finally, petitioner argues that throughout the trial, the prosecution improperly elicited testimony regarding the screwdriver and expired employee ID recovered from petitioner's bag, and then improperly "exploited" this testimony in summation in a manner that suggested that petitioner had a propensity to commit criminal acts (Petition 7; Pet. App. Br. at 40-44).  For example, during summation the prosecution stated:

> [PEOPLE]: The screwdriver, what is he doing carrying a
> screwdriver?  It's used to tighten screws, to loosen
> screws, to take things apart.
>
> It's not used by messengers, okay.  Messengers
> carry radios.  Messengers carry bags and he did have a
> bag.
>
> Messengers carry chains to secur[e] bicycles and
> things of that sort.  You ever hear of a messenger
> carrying a screwdriver, no because they don't because
> he wasn't there as a messenger, okay.  The screwdriver
> is something that you use if you want to pry open a
> door, pry open a window, to gain access to something
> that's locked.  That's why the screwdriver was in the
> bag; more physical evidence of his intent to commit a
> crime.
>
> Luckily for him.
>
> [DEFENSE]: Objection.

THE COURT: Overruled.

(Tr. 249).

A prosecutor's comments or argument during trial will justify habeas relief only when they "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986), quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974); Bossett v. Walker, supra, 41 F.3d at 829 (2d Cir. 1994) ("The appropriate standard of review for a claim of prosecutorial misconduct on a writ of habeas corpus 'is the narrow one of due process, and not the broad exercise of supervisory power.'"), quoting Floyd v. Meachum, 907 F.2d 347, 353 (2d Cir. 1990), quoting Darden v. Wainwright, supra, 477 U.S. at 181. Accord Greer v. Miller, 483 U.S. 756, 765 (1987) ("To constitute a due process violation, the prosecutorial misconduct must be 'of sufficient significance to result in the denial of the defendant's right to a fair trial.'"), quoting United States v. Bagley, 473 U.S. 667, 676 (1985).

In order to justify federal habeas relief, a petitioner "must demonstrate that he suffered actual prejudice because the prosecutor's comments . . . had a substantial and injurious effect or influence in determining the jury's verdict. Habeas relief is not appropriate when there is merely a 'reasonable

possibility' that trial error contributed to the verdict."
Bentley v. Scully, 41 F.3d 818, 824 (2d Cir. 1994), quoting
Brecht v. Abrahamson, 507 U.S. 619, 637 (1993); Escobar v.
Senkowski, 02 Civ. 8066 (LAK)(THK), 2005 WL 1307939 at *16
(S.D.N.Y. May 26, 2005)(same), quoting Tankleff v. Senkowski, 135
F.3d 235, 252 (2d Cir. 1998).

When a prosecutor is found to have engaged in improper
conduct, Courts in this Circuit have considered the following
non-exhaustive factors in assessing whether prosecutorial miscon-
duct resulted in actual prejudice to a criminal defendant:  "(1)
the severity of the prosecutor's conduct; (2) what steps, if any,
the trial court may have taken to remedy any prejudice; and (3)
whether the conviction was certain absent the prejudicial
conduct."  Bentley v. Scully, supra, 41 F.3d at 824, citing
Gonzalez v. Sullivan, 934 F.2d 419, 424 (2d Cir. 1991); see also
United States v. Millar, 79 F.3d 338, 343 (2d Cir. 1996); Floyd
v. Meachum, supra, 907 F.2d at 355; United States v. Modica, 663
F.2d 1173, 1181 (2d Cir. 1981).  These mitigating factors are
present here.

Here, the prosecution's statements during summation
were not improper.  First, the prosecution's use of the phrase
"non-issue" to refer to certain elements of burglary was clearly
meant to convey the strength of the evidence against petitioner,

25

and not a suggestion that any element would not have to be proven beyond a reasonable doubt.  Indeed, immediately after the prosecution used the phrase, it proceeded to discuss at length the testimony that established each element of the crime (Tr. 245-61).  Second, the prosecution's comment on the defense's reliance on inconsistencies in testimony cannot be fairly said to have "denigrated" defense counsel; the statements were directed at defense counsel's arguments, not at him personally, and there was simply no disparaging, excessively rhetorical, or even mildly abusive language that suggests otherwise.  Moreover, it is not improper for an attorney to argue that his or her adversary's arguments are a diversionary tactic.  See United States v. Lee, 123 F. App'x 439, 441 (2d. Cir 2005); Everett v. Fischer, 00-CV-6300(NG), 2002 WL 1447487 at *3 (E.D.N.Y. July 3, 2002).  Third, the prosecutor's statement that acquittal would require the jury to "believe that Donna Bubash is lying" was permissible argument in light of the nature of the case and defense counsel's preced-ing summation, which attacked Bubash's credibility.  As the Trial Court correctly noted, the case was not one of mistaken identity -- petitioner did not dispute that he was inside the apartment with Bubash -- and thus, the Court was within its discretion in allowing the prosecution to emphasize this aspect of the case in its arguments:

> [THE COURT]:  Let's say that the [petitioner] for
> argument's sake testified and let's say he said that he
> worked for a certain company on that day?  Well, then
> the argument would be he either did or he didn't.  He
> is not mistaken about that.  He is either telling the
> truth or he isn't and along those lines, I let that
> argument stand.

(Tr. 268-69).  Finally, the petitioner's argument that the
prosecutor injected his personal beliefs into his summation is
untenable.  The passage petitioner cites contains no use of the
pronoun "I" or any other rhetorical device that would imply the
prosecutor was attempting to bolster the case with his own views
or the prestige of his office.  Thus, the Trial Court was correct
in overruling all of defense counsel's summation objections on
the ground that the prosecution was engaging in permissible
argument (Tr. 244-61), and in re-emphasizing this point in
denying petitioner's post-summation motion for a mistrial (Tr.
266-70).  See United States v. Miller, 116 F.3d 641, 682-83
(prosecutor's comment that defendants were "guilty on all
counts," made at the conclusion of summation, did not constitute
improper vouching).

The prosecution's elicitation of testimony relating to
the screwdriver and the ID card, and subsequent reference to the
items during summation, were also not improper attempts to
demonstrate petitioner's criminal propensity.  The Trial Court
denied suppression of the contents of petitioner's bag, including

the screwdriver and the ID card, and explicitly noted that the prosecution was "at liberty to elicit testimony with regard to the search and seizure of the bag and its contents" (Tr. 2-3). Thus, it was well within the bounds of fair argument for the prosecutor to elicit testimony about these items, and to argue during summation that petitioner was carrying these items, for which no reasonable explanation was offered, for criminal purposes.

However, even assuming, arguendo, that the prosecutor's statements were improper, when viewed in the context of the defense argument that preceded them and given the mitigating factors set forth below, these comments individually and cumulatively did not substantially prejudice petitioner and, thus, do not warrant habeas relief. United States v. Modica, supra, 663 F.2d at 1181 ("A prosecutor's improper summation results in a denial of due process when the improper statements cause substantial prejudice to the defendant.").

First, the prosecutor's statements was not severe.  The allegedly improper comments were brief and relegated entirely to summation, an area in which the prosecution enjoys broad leeway. United States v. Edwards, 342 F.3d 168, 181 (2d Cir. 2003)("The government has broad latitude in the inferences it may reasonably suggest to the jury during summation."), quoting United States v.

28

Zackson, 12 F.3d 1178 (2d Cir. 1993).  In addition, the Appellate
Division found that the prosecution's alleged burden-shifting
statement was a fair response to defense counsel's summation, and
that there was nothing in the prosecutor's remaining conduct
"that was so egregious as to warrant reversal."  People v. Ely,
supra, 45 A.D.3d at 466, 845 N.Y.S.2d at 734; accord Tankleff v.
Senkowski, supra, 135 F.3d at 253 ("[T]he severity of the prose-
cutor's misconduct in [petitioner's] case was mitigated by the
brevity and fleeting nature of the improper comments."); Escobar
v. Senkowski, supra, 2005 WL 1307939 at *15 ("[A] prosecutor's
improper comments during summation must be more than short and
fleeting, but must instead be so numerous and, in combination, so
prejudicial that a new trial is required.")(internal quotation
marks omitted).  Brief and limited instances of improper argument
by the prosecution during its summation do not ordinarily warrant
habeas relief.  Donnelly v. DeChristoforo, supra, 416 U.S. at 646
("isolated passages" of prosecutor's argument, while improper,
did not merit habeas relief); Kaiser v. New York, 394 U.S. 280,
281 n.5 (1969)(same).

      Second, the Trial Court instructed the jury both before
and at several points during summations that each party's closing
statement was merely argument and that the jury could accept or
reject these arguments (Tr. 226-27, 245, 247, 258, 270).  The

Trial Court also provided a detailed charge to the jury on each
element of burglary in the second degree (Tr. 293-96).  A jury is
"presumed to follow their instructions[,]" <u>Richardson v. Marsh</u>,
481 U.S. 200, 211 (1987), and the record discloses no reason why
this presumption should not apply here. <u>See</u> <u>Wicks v. Miller</u>, 05
Civ. 5341 (JGK), 2007 WL 1434992 at *6 (S.D.N.Y. May 15,
2007)(Koeltl, D.J.)(jury not unduly influenced by prosecutor's
comments concerning the evidence during opening statement where
trial court instructed jury that only its recollection of the
evidence controlled).

        Third, petitioner's conviction was certain absent the
prosecutor's comment because the prosecution presented substan-
tial evidence of petitioner's guilt.  Bubash testified that she
found petitioner inside her bedroom holding her purse, and that
he falsely claimed to be a courier delivering a package (Tr. 28-
30).  Although petitioner claimed to work for Federal Express, he
had no uniform or any other documentation to support this conten-
tion, and soon told Bubash that he would not "do this again" (Tr.
29, 32).  A carpenter who was working in the next apartment and
the arresting officer offered testimony as to petitioner's
failure to offer any credible explanation for his presence in the
building (Tr. 108-41).  The arresting officer offered additional
testimony about the items recovered from petitioner's bag, which

included a six inch, flat head screwdriver, a tool commonly used in burglaries (Tr. 113).  Finally, petitioner's former manager at Supreme Systems, a courier service, testified that petitioner had been terminated as a courier two months prior to the incident in question (Tr. 180-92).  Thus, given the overwhelming evidence of guilt presented at trial, coupled with the fact that the prosecutor's comments were extremely limited, petitioner has failed to established that, if the prosecutor's arguments were improper, they had a substantial or injurious effect or influence on the jury's verdict.  See Bentley v. Scully, supra, 41 F.3d at 825 ("Because of the compelling evidence in the prosecution's case against [petitioner], as well as the fact that the prosecutor's summation comments were both brief and isolated, we find that [petitioner] has failed to demonstrate that the prosecutor's misconduct had a substantial or injurious effect on the jury's verdict.").

Finally, when analyzing the prosecution's improper argument during summation for possible substantial or injurious effect or influence on the jury's verdict, the prosecution's comments cannot be examined in isolation.  Rather, the prosecution's arguments must be reviewed in the context of the defense's summation that preceded it.  See, e.g., Shannon v. Senkowski, 00 Civ. 2865 (NRB), 2000 WL 1683448 at *7 (S.D.N.Y. Nov. 9,

2000)(Buchwald, D.J.)("In determining the unfairness caused by a prosecutor's improper comments, courts must consider the comments in the broader context of the entire argument before the jury." (internal quotation marks omitted)); see also Greer v. Miller, supra, 483 U.S. at 765-66, quoting Darden v. Wainwright, supra, 477 U.S. at 179 ("It is helpful as an initial matter to place [the prosecution's] remarks in context. . . . The prosecutors' comments must be evaluated in light of the defense argument that preceded it. . . ."). Improper argument by the prosecution during summation -- although not excused -- is less likely to be found actually prejudicial to the trial's fairness where the defense's summation invites the prosecution's response. "The idea of 'invited response' is used not to excuse improper comments, but to determine their effect on the trial as a whole." Darden v. Wainwright, supra, 477 U.S. at 182; see also Escobar v. Senkowski, supra, 2005 WL 1307939 at *14 (noting "that where the defense's summation invites a particular response from the prosecution, such a response is less likely to jeopardize the trial's fairness"). Here, the defense's summation specifically raised the issue of intent, suggesting that petitioner, given his voluntary departure from Bubash's apartment once confronted, lacked the intent to commit burglary (Tr. 235). This, in turn, invited the prosecution to proffer some explanation in response

32

during its summation.  Indeed, the Appellate Division, in ad-
dressing petitioner's burden-shifting claim, noted that "[t]he
remarks in question were responsive to defendant's summation and
did not mislead the jury as to the appropriate burden of proof."
The defense's summation also attacked Bubash's credibility and
raised other testimonial inconsistences amongst the prosecution's
witnesses (227-40), further inviting a response.

Thus, there was nothing improper in the prosecution's
closing argument.  Even if there were, when viewed in the context
of the defense argument that preceded it, the prosecution's
arguments did not have a substantial and injurious effect on the
trial's fairness, and thus do not warrant habeas relief.

    2.  <u>Apprendi
       Claim</u>[5]

Petitioner's next ground for habeas relief is that the
sentence imposed on him pursuant to New York's PFO Statute
violated his Sixth Amendment right to a jury trial, on the theory
that the sentencing judge engaged in impermissible judicial fact-
finding in determining that petitioner was a persistent felony
offender (Petition 7; Pet. App. Br. at 50-55).

---

[5]  Respondent concedes that petitioner's <u>Apprendi</u> claim is
exhausted (Opp'n Memo. at 20).

In <u>Portalatin v. Graham</u>, <u>supra</u>, 624 F.3d at 72, decided after petitioner filed his petition, the Second Circuit, sitting <u>en</u> <u>banc</u>, unequivocally upheld the constitutionality of New York's PFO Statute.  Thus, it is now clear that New York's PFO Statute does not violate <u>Apprendi</u>.  <u>Jones v. Heath</u>, 10 Civ. 8644 (RJS)(FM), 2012 WL 2673649 at *2 (S.D.N.Y. July 5, 2012)(Sullivan D.J.)("[T]here is no question that <u>Portalatin</u> remains the law of this Circuit and binding on this Court."); <u>Garvin v. Artist</u>, 08 Civ. 5285 (PAC)(FM), 2012 WL 1428904 at *6 (S.D.N.Y. Apr. 25, 2012)(Crotty D.J.); <u>Mason v. Duncan</u>, 02 Civ. 5729, 2011 WL 2518964 at *2 (S.D.N.Y. June 23, 2011)(Wood, D.J.).

Thus, petitioner's claim that his sentence under New York's PFO Statute violated the Sixth Amendment cannot provide a basis for relief.

    3.  Excessive
        <u>Sentence Claim</u>

Petitioner's next ground for habeas relief is that the sentence imposed on him was excessive (Petition 7; Pet. App. Br. at 56-60).

In his habeas petition and appellate brief, petitioner does not specify the Constitutional right he believes has been violated by his "excessive" sentence.  Rather, Petitioner's

34

appellate brief argues only that the sentence was excessive because petitioner has a troubled family history and has never caused anyone physical harm during the commission of any crime. Petitioner's habeas petition and appellate brief do not, however, contend that his sentence violates any right protected by federal law.  Petitioner did not, therefore, properly exhaust his state court remedies with respect to any constitutional claim concerning his sentence, and his state law claim that his sentence should be reduced in the interests of justice is not cognizable. See Stallings v. Woods, 04 CV 4714 (RLM), 2006 WL 842380 at *22 (E.D.N.Y. Mar. 27, 2006), citing Medina v. Greene, 03 Civ. 8646 (DC), 2004 WL 2809196 at *4 (S.D.N.Y. Dec. 7, 2004) (Chin, then D.J., now Cir. J.) (petitioner "did not fairly present the excessive sentence claim in federal constitutional terms" by appealing to the Appellate Division's power under N.Y. Crim. Proc. Law § 440.15, to reduce an excessive sentence in the interest of justice); Rivera v. Greiner, 272 F. Supp. 2d 197, 201 (E.D.N.Y. 2003); see also White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992) (per curiam), citing McCleskey v. Zant, 499 U.S. 467 (1991); and Rose v. Lundy, 455 U.S. 509 (1982).

Although petitioner has not explicitly argued either here or in state court that his sentence violated his rights under the United States Constitution, even if I read the petition

as raising an Eighth Amendment claim, as petitioner proposes in his motion to amend, there is no merit to this claim.[6]  A sentence violates the Eighth Amendment when the sentence is "grossly disproportionate" to the crime committed or when the sentence imposed "shocks the collective conscience of society."  United States v. Gonzalez, 922 F.2d 1044, 1053 (2d Cir. 1991); see Kennedy v. Louisiana, 554 U.S. 407, 420-21 (2008); Atkins v. Virginia, 536 U.S. 304, 311 (2002); see also Lockyer v. Andrade, supra, 538 U.S. at 73-76; Harmelin v. Michigan, 501 U.S. 957, 1001 (1991); United States v. Snype, 441 F.3d 119, 152 (2d Cir. 2006); United States v. Romano, 825 F.2d 725, 731 (2d Cir. 1987); Pressley v. Bennett, 235 F. Supp. 2d 349, 368-69 (S.D.N.Y. 2003) (Berman, D.J.); Calderon v. Keane, 97 Civ. 2116 (RCC)(JCF), 2002 WL 1205745 at *14 (S.D.N.Y. Feb. 21, 2002) (Francis, M.J.)(Report & Recommendation), adopted, 2003 WL 22097504 (S.D.N.Y. Sept. 9, 2003) (Duffy, D.J.); Sutton v. Herbert, 39 F. Supp. 2d 335, 337 (S.D.N.Y. 1999) (Conner, D.J.).

Petitioner was convicted of burglary in the second degree, a class C felony, which required the Trial Court to sentence him as a persistent violent felony offender to an

---

[6] Although any federal claim concerning petitioner's sentence is unexhausted, I may, nevertheless, consider the claim on the merits to deny the claim.  28 U.S.C. § 2254(b)(2).

indeterminate term of incarceration with a minimum of between sixteen and twenty-five years and a maximum of life.  See N.Y. Penal Law §§ 140.25(2); 70.08; 70.02(1)(b); 70.45(2)(e); N.Y. Crim. Proc. Law § 400.16.  Petitioner was ultimately sentenced to a term of twenty years to life (Petition 1).  A sentence within the range established by state law, as the sentence here clearly was, is ordinarily not subject to an Eighth Amendment challenge. See White v. Keane, supra, 969 F.2d at 1383 ("No federal consti- tutional issue is presented where . . . the sentence is within the range prescribed by state law."); Diaz v. Herbert, 317 F. Supp. 2d 462, 479-80 (S.D.N.Y. 2004) (Marrero, D.J.); Mayo v. Burge, 02 Civ. 10192 (NRB), 2003 WL 21767767 at *6 (S.D.N.Y. July 30, 2003) (Buchwald, D.J.); Brown v. Goord, 02 Civ. 2122 (NRB), 2002 WL 31093611 at *5 (S.D.N.Y. Sept. 13, 2002) (Buchwald, D.J.); Espinal v. Barkely, 95 Civ. 1214 (HB), 1996 WL 673833 at *1 (S.D.N.Y. Nov. 20, 1996) (Baer, D.J.); Rodriguez v. O'Keefe, 96 Civ. 2094 (LLS), 1996 WL 428164 at *7 (S.D.N.Y. July 31, 1996) (Stanton, D.J.), aff'd mem., 122 F.3d 1057 (2d Cir. 1997).

　　As stated by the Supreme Court, a habeas court will find that a state-law sentence is "grossly disproportionate" and violates the Eighth Amendment only "in the 'exceedingly rare' and 'extreme' case."  Lockyer v. Andrade, supra, 538 U.S. at 73, quoting Harmelin v. Michigan, supra, 501 U.S. at 1001; accord

Ewing v. California, 538 U.S. 11, 21 (2003); United States v. Snype, supra, 441 F.3d at 152; Whitlatch v. Senkowski, 344 F. Supp. 2d 898, 905-07 (W.D.N.Y. 2004); Vasquez v. Walker, 01 Civ. 8032 (AKH), 2004 WL 594646 at *5 (S.D.N.Y. Mar. 25, 2004) (Hellerstein, D.J.); Ayala v. People, 03 Civ. 2762 (AKH), 2004 WL 527035 at *5 (S.D.N.Y. Mar. 16, 2004) (Hellerstein, D.J.); Williams v. Philips, 02 Civ. 5811 (DC), 2003 WL 21961127 at *8 (S.D.N.Y. Aug. 18, 2003) (Chin, then D.J., now Cir. J.).  Other courts have reviewed sentences imposed pursuant to recidivist sentencing statutes for comparable or less serious offenses and have uniformly upheld such sentences as consistent with the Eighth Amendment.  Ewing v. California, supra, 538 U.S. 11 (sentence of 25 years to life imposed on recidivist for stealing three golf clubs not cruel and unusual); Lockyer v. Andrade, supra, 538 U.S. 77 (sentence of 25 years to life for stealing $150 worth of videotapes not cruel and unusual); Rummel v. Estelle, 445 U.S. 263 (1980) (sentence of life imprisonment for third-time felon who had, over the course of nine years, commit-ted three larcenies with loss amounts of $80.00, $28.36 and $120.75, respectively, not cruel and unusual punishment).

Thus, petitioner's excessive sentence claim does not provide any basis for habeas corpus relief.

38

    4.   Confrontation
         Clause Claim

        Petitioner's next ground for habeas relief is that the

prosecution's failure to call two members of the NYPD Evidence

Collection Team to testify regarding a possible fingerprint

report violated the Confrontation Clause of the Sixth Amendment

as construed by Melendez-Diaz v. Massachusetts, supra, 557 U.S.

at 305 (Pet. Mot. to Amend at 6-7).  Because this claim was never

raised in state court, it is likely barred from habeas corpus

review.  Even assuming, however, that the claim was preserved, it

is entirely without merit.

        At some point during trial, communication between the

prosecution and defense counsel revealed that two members of the

NYPD Evidence Collection Team, Officers Stewart and Alfani, had

dusted the crime scene for fingerprints after petitioner's arrest

(Tr. 148-49).  A memo book entry of Officer Stewart, indicating

"negative results," or that no fingerprints had been lifted, was

turned over to the defense during trial (Tr. 155-56).  The

prosecution was unable to ascertain, after a search was con-

ducted, whether any additional documentation, such as a finger-

print report, existed (Tr. 148-73).  To resolve this evidentiary

lacuna, the prosecution and defense entered into a stipulation

that no fingerprints had been found in Bubash's apartment.[7]
Neither Officer Stewart nor Officer Alfani was called to testify
by the prosecution, and no fingerprint-related materials were
ever offered into evidence by the prosecution.

Petitioner argues that the prosecution's failure to
call Officers Stewart and Alfani prevented "the defense from
exploring the fingerprint report and memo book," items that were
"exculpatory and material to petitioner's guilt or innocence"
(Pet. Mot. to Amend Mem. at 2).  Petitioner further argues that
the failure to call the officers as witnesses "prevented the
defense from exploring the possibility that the analysts lacked
proper training or had poor judgment or from testing their
'honest [sic], proficiency, and methodology'" (Pet. Mot. to Amend
Mem. at 2)

In Melendez-Diaz, a narcotics case, the Supreme Court
held that the admission of certificates of laboratory analysis,

---

[7] The full stipulation was read to the jury as follows:

> [PEOPLE]: Ladies and gentlemen, if a police officer
> from the New York City Police Department Evidence
> Collection Team would have testified here, that officer
> would say that the areas of apartment 5-C including
> People's No. 9, in evidence, the bag, were analyzed for
> fingerprint evidence and that no identifiable
> fingerprints were found.

(Tr. at 196).

in lieu of the live testimony of the analysts who prepared them, violated a defendant's Sixth Amendment right to be confronted with the witnesses against him.  Melendez-Diaz v. Massachusetts, supra, 557 U.S. at 307-09.  The certificates of laboratory analysis, which were sworn to before a notary public and detailed the results of tests conducted on substances recovered from the defendant, were held to be within the "core class of testimonial statements" contemplated by Crawford v. Washington, 541 U.S. 36 (2004).  Melendez-Diaz v. Massachusetts, supra, 557 U.S. at 310. The Court ultimately held that "[t]he Sixth Amendment does not permit the prosecution to prove its case via ex parte out-of-court affidavits."  Melendez-Diaz v. Massachusetts, supra, 557 U.S. at 329.

Petitioner ignores the fact that no fingerprint evidence -- either testimonial or documentary -- was offered against him.  As noted above, due to the prosecution's difficulty in ascertaining whether a fingerprint report even existed, the prosecution and defense stipulated that no fingerprint evidence was recovered from the scene of the crime, a stipulation that actually favored petitioner.  Thus, since no hearsay evidence concerning fingerprints was offered against petitioner, there is no Confrontation Clause issue.

Therefore, petitioner's Confrontation Clause claim cannot serve as a basis for habeas corpus relief.

### 5. <u>Rosario</u> and <u>Brady</u> Claims

Petitioner next asserts are that the prosecution violated his rights under <u>People v. Rosario</u>,[8] <u>supra</u>, 9 N.Y.2d at 290-91, 173 N.E.2d at 884, 213 N.Y.S.2d at 452, and <u>Brady v. Maryland</u>, <u>supra</u>, 373 U.S. at 83, by failing to turn over a report of fingerprint analysis conducted at the crime scene (Pet. Mot. to Amend at 6-7).

First, to the extent petitioner is asserting a <u>Rosario</u> violation he has alleged only a state law claim which is not even cognizable in a federal habeas corpus proceeding. <u>See</u> <u>Landy v. Costello</u>, 141 F.3d 1151, 1151 (2d Cir. 1998)("To the extent that this claim is based on a <u>Rosario</u> violation, it must fail, because a habeas petition can only be granted to remedy some violation of federal law; the obligation to turn over Rosario material arises under state law."); <u>see also</u> <u>Bynum v. Duncan</u>, 02 Civ. 2124 (RWS),

---

[8] In <u>People v. Rosario</u>, the New York Court of Appeals held, as a matter of state law, that a criminal defendant is entitled to the prior statements of the prosecution's witnesses in order to determine if the testimony of such witnesses in court departs from their prior statements.  The holding in <u>Rosario</u> has been codified in N.Y. Crim. Proc. Law § 240.45.

2003 WL 296563 at *9 n.5 (S.D.N.Y. Feb. 12, 2003)(Sweet, D.J.);

Clark v. Portuondo, 00 Civ. 2491 (DAB)(RLE), 2002 WL 31553502 at

*2-*3 (S.D.N.Y. Nov. 13, 2002)(Ellis, M.J.)(Report & Recommenda-

tion); Johnson v. Filion, 232 F. Supp. 2d 98, 100 (S.D.N.Y. 2002)

(Berman, D.J.); Senor v. Greiner, 00-CV-5673JG, 2002 WL 31102612

at *12 (E.D.N.Y. Sept. 18, 2002); Johnson v. State, 01 Civ. 4219

(GEL), 2002 WL 1974048 at *1-*2 (S.D.N.Y. Aug. 26, 2002)(Lynch,

then D.J., now Cir. J.).

    Petitioner's Brady claim must also be rejected.  The

standards applicable to a collateral attack on a conviction based

on a putative Brady violation were succinctly set forth by the

Honorable Lewis A. Kaplan, United States District Judge, in

Lamberti v. United States, 22 F. Supp. 2d 60, 66-67 (S.D.N.Y.

1998), aff'd without published opinion sub nom., Badalamenti v.

United States, 201 F.3d 430 (2d Cir. 1999):

> In order to establish a Brady v. Maryland viola-
> tion, the defendant must show that (1) the government
> suppressed favorable evidence, and (2) the evidence the
> government suppressed was material.  A defendant cannot
> satisfy the suppression requirement if the defendant,
> directly or through counsel, "either knew, or should
> have known, of the essential facts permitting him to
> take advantage of [that] evidence."  As for the materi-
> ality requirement, "favorable evidence is material, and
> constitutional error results from its suppression by
> the government, if there is a reasonable probability
> that, had the evidence been disclosed to the defense,
> the result of the proceeding would have been differ-
> ent."  "A 'reasonable probability' is 'a probability

sufficient to undermine confidence in the outcome' of
the case."

(footnotes and citations omitted).  See also Banks v. Dretke, 540

U.S. 668, 691 (2004); Strickler v. Greene, 527 U.S. 263, 281-82

(1999); Tankleff v. Senkowski, 135 F.3d 235, 250-51 (2d Cir.

1998); Leake v. Senkowski, 01 Civ. 7559 (SHS)(GWG), 2004 WL

1464889 at *19 (S.D.N.Y. June 30, 2004) (Gorenstein, M.J.)

(Report & Recommendation).

Here, the Trial Court conducted an extensive colloquy

with counsel, in which it became apparent that it was unlikely

that fingerprints were lifted from the crime scene, or that a

fingerprint report even existed (Tr. 148-73).  For example, the

prosecutor made the following representation to the Court:

> [PEOPLE]:  It's my understanding that there were no
> lifts taken at all and I base that conclusion on an
> entry in a memo book that I discovered after this issue
> arose yesterday.  And I also base that conclusion after
> a phone call to the print laboratory where these prints
> that if they are lifted, they are compared to see if
> there is a match or to identify the person who left the
> print and they have no record of any prints being
> submitted.
>
> So I think we know what happened here.  I think
> they went to the apartment, the police that is, went to
> the apartment and they dusted for fingerprints and they
> didn't lift anything.
>
> THE COURT: Okay.
>
> [PEOPLE]: And there may or may not be a report about
> that.  So that's where we stand.

44

(Tr. 149-50).  The prosecution went on to describe the steps that had been taken to locate a fingerprint report, and the fact that none had been located (Tr. 154-55).  After hearing from counsel, the Court noted that "it appear[ed] that no report was generated" (Tr. 159) and "the absence of [petitioner's] fingerprints . . . [is] not Brady material" (Tr. 161).  It goes without saying that there is no duty under Brady to furnish or create exculpatory information that does not exist.  Caswell v. Racetti, 11-CV-0153 MAT, 2012 WL 1029457 at *11 (W.D.N.Y. Mar. 26, 2012).  Even if a fingerprint report did exist, however, the issue was resolved by the favorable stipulation cited above.  The stipulation, which stated that "no fingerprints were found" at the scene of the crime, completely negates any claim of prejudice by the peti-tioner (Tr. at 196).

Thus, neither petitioner's Rosario claim nor his Brady claim afford a basis for relief.

### 6.   Substitution of Counsel Claim

Petitioner next claims that he is entitled to habeas corpus relief because the Trial Court refused to allow him to articulate his desire for new counsel (Pet. Mot. to Amend at 6).

The standards applicable to a substitution of counsel
claim were succinctly set forth by the Honorable Michael A.
Telesca, United States District Judge, in <u>Muhammad v. Artus</u>,
08-CV-0216 (MAT), 2010 WL 3092165 at *5  (W.D.N.Y. Aug. 5, 2010):

> The Sixth Amendment provides that "[i]n all crimi-
> nal prosecutions, the accused shall enjoy the right . .
> . to have the Assistance of Counsel for his defence."
> U.S. Const. amend. VI.  However, "the right to choose
> one's own counsel is not absolute." <u>United States v.</u>
> <u>Jones</u>, 381 F.3d 114, 119 (2d Cir. 2004) (citations
> omitted).  Rather, "[t]he Sixth Amendment guarantees a
> criminal defendant an effective advocate, not necessar-
> ily the advocate of his or her choosing." <u>Id</u>. (citation
> omitted).  "Because the right to counsel of one's
> choice is not absolute, a trial court may require a
> defendant to proceed to trial with counsel not of
> defendant's choosing; although it may not compel defen-
> dant to proceed with incompetent counsel." <u>United</u>
> <u>States v. Schmidt</u>, 105 F.3d 82, 89 (2d Cir. 1997).
>
> Whether or not to permit substitution of counsel
> is within the discretion of the trial judge and turns
> on the facts of the case.  <u>See</u> <u>McKee v. Harris</u>, 649
> F.2d 927, 931 (2d Cir. 1981).  It is not sufficient for
> a defendant simply to request a new lawyer.  "[A]
> defendant seeking substitution of assigned counsel . .
> . must afford the court with legitimate reasons for the
> lack of confidence." <u>McKee</u>, 649 F.2d at 932. "'In
> order to warrant a substitution of counsel during
> trial, the defendant must show good cause, such as a
> conflict of interest, a complete breakdown of communi-
> cation or an irreconcilable conflict which leads to an
> apparently unjust verdict.'"  <u>Id</u>. at 931 (quoting
> <u>United States v. Calabro</u>, 467 F.2d 973, 986 (2d Cir.
> 1972)).
>
> In evaluating whether a trial court abused its
> discretion in denying a defendant's motion for substi-
> tution of counsel, the Second Circuit has looked at the
> following factors:  the timeliness of the defendant's
> motion; adequacy of the trial court's inquiry into the

defendant's complaint about counsel; and whether the
attorney/client conflict was "'so great that it had
resulted in total lack of communication preventing an
adequate defense.'" United States v. Simeonov, 252
F.3d 238, 241 (2d Cir. 2001) (quoting Morris v. Slappy,
461 U.S. 1, 13, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983));
accord United States v. John Doe No. 1, 272 F.3d 116,
122 (2d Cir. 2001).

Muhammad v. Artus, supra, 2010 WL 3092165 at *5.

At several points during trial, petitioner expressed

dissatisfaction with his trial counsel (Tr. 2, 5-10, 173-77).

However, at no point did petitioner provide evidence of legiti-

mate reasons for the substitution of counsel, such as a conflict

of interest or a complete breakdown of communication.  Although

petitioner did have a right to proceed without incompetent

counsel, there is simply no evidence to suggest that his trial

counsel was incompetent; indeed, after petitioner's trial counsel

read a prepared statement from petitioner to the Court alleging

various misconduct, the Court commended defense counsel on his

performance:

> THE COURT:  I find that [defense counsel's] representa-
> tion of the defendant has been performed on the highest
> level of competency and advocacy, been knowledgeable
> and zealous trial advocate [sic].
>
> He's made all the arguments, motions, objections
> and actions that I would have anticipated were appro-
> priate in the defense of the defendant and there is
> nothing in the application that was just made that is
> of a factual or evidentiary nature that substantiates
> any of the complaints, charges, or criticisms that the
> defendant has leveled in this matter.

(Tr. at 173-77).  The Court went on to construe petitioner's written statements as a motion for a mistrial, which it denied (Tr. 176-77).  There is no indication in the record that petitioner ever made a formal application to substitute his trial counsel, or that his trial counsel prevented him from doing so. Even if petitioner's written statement could be construed as a motion to substitute counsel, however, in light of the laudatory comments cited above and the absence of evidence to the contrary, its denial was not an abuse of discretion.

Thus, petitioner cannot obtain habeas relief on the ground that he was denied the right to substitute his trial counsel.

B.   Petitioner's Procedurally
     Barred Claims

A number of petitioner's other claims must be rejected because they are procedurally barred.

A habeas petitioner's constitutional claim can be procedurally barred if it has not been asserted in state court proceedings in accordance with state procedural requirements and the state courts rely on that violation of state procedural requirements to reject the claim.  As the Court of Appeals for the Second Circuit has explained:

48

The independent and adequate state ground doctrine first arose in the context of direct appeals to the Supreme Court from final judgments of the state courts. Under that doctrine the Supreme Court "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).  Moreover, "[t]his rule applies whether the state law ground is substantive or procedural." Id.

*     *     *

The doctrine also applies in the context of federal courts reviewing applications for a writ of habeas corpus . . . .  [I]nvoking principles of comity and federalism . . . federal habeas courts faced with an independent and adequate state ground of decision defer in the same manner as does the Supreme Court on direct review.

Garcia v. Lewis, 188 F.3d 71, 76 (2d Cir. 1999); see also Beard v. Kindler, --- U.S. ---, ---, 130 S.Ct. 612, 614 (2009) ("A federal habeas court will not review a claim rejected by a state court if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment.") (inner quotations omitted); Cone v. Bell, --- U.S. ---, --- 129 S.Ct. 1769, 1780 (2009) (same); Bierenbaum v. Graham, 607 F.3d 36, 47-48 (2d Cir. 2010) (same); Cotto v. Herbert, 331 F.3d 217, 238-39 (2d Cir. 2003); Rhagi v. Artuz, 309 F.3d 103, 106 (2d Cir. 2002), citing Coleman v. Thompson, supra, 501 U.S. at 729-31 ("[I]t is settled law that an independent and adequate state law ground for a state court

49

conviction cannot be disturbed on habeas."); <u>Brown v. State of New York</u>, 04-CV-1087 (NG)(VVP), 2006 WL 3085704 at *2 (E.D.N.Y. Oct. 30, 2006) ("When a habeas corpus petitioner defaults a federal claim in state court . . . by failing to preserve the claim for state appellate review . . . , the independent and adequate state ground doctrine bars federal habeas corpus review."); <u>Rivera v. Moscicki</u>, 03 Civ. 5810 (SAS), 2005 WL 2347840 at *2 (S.D.N.Y. Sept. 22, 2005) (Scheindlin, D.J.) ("A federal court generally may not review a state court decision that expressly relies on a procedural default as an independent and adequate state ground for dismissal.").

Dismissal of a claim on the ground that consideration of the merits is precluded by an adequate and independent state procedural ground is appropriate where the last reasoned state court decision expressly relies on a state procedural bar:

> In <u>Harris [v. Reed</u>, 489 U.S. 255 (1989)], the Court held that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." <u>Harris</u>, 489 U.S. at 263, 109 S.Ct. 1038 (internal quotation marks omitted). We apply the <u>Long/Harris</u> presumption to the last "reasoned state judgment" . . . . <u>See</u> <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

<u>Jones v. Stinson</u>, 229 F.3d 112, 118 (2d Cir. 2000). <u>See also</u> <u>Galarza v. Keane</u>, <u>supra</u>, 252 F.3d at 637 ("We have repeatedly

stated that in order for federal habeas review to be procedurally barred, a state court must actually have relied on a procedural bar as an independent basis for its disposition of the case, and the state court's reliance on state law must be unambiguous and clear from the face of the opinion.").

As long as the state court relies on a procedural bar as an independent basis for its decision, a claim will be procedurally barred on federal habeas review even where a state court addresses the merits of the claim in the alternative.  As the Court of Appeals for the Second Circuit has noted:

> This court has held that "federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim." Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990); Harris, 489 U.S. at 264 n.10, 109 S.Ct. at 1044 n.10 ("[A] state court need not fear reaching the merits of a federal claim in an alternative holding"); Wedra v. Lefevre, 988 F.2d 334, 338-39 (2d Cir. 1993).

Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996).  See also Robles v. Superintendent of Elmira Fac., 07 Civ. 596 (LBS), 2007 WL 2600857 at *3 n.3 (S.D.N.Y. Aug. 30, 2007) (Sand, D.J.); Ashley v. Burge, 05 Civ. 4497 (JGK), 2006 WL 3327589 at *5 n.5 (S.D.N.Y. Nov. 3, 2006) (Koeltl, D.J.).

However, even where the last reasoned decision of the state court expressly rejects a federal constitutional claim on a

state procedural ground, federal habeas corpus review will not be precluded if (1) the state procedural ground is not independent and adequate, see Jimenez v. Walker, 458 F.3d 130, 138 (2d Cir. 2006); Monroe v. Kuhlman, 433 F.3d 236, 241-42 (2d Cir. 2006); Cotto v. Herbert, supra, 331 F.3d at 238-39; (2) there is cause for and prejudice from petitioner's failure to assert his claims in accordance with state procedural law, or (3) a failure to consider the claim would result in a fundamental miscarriage of justice. Schlup v. Delo, 513 U.S. 298, 324-27 (1995); Coleman v. Thompson, supra, 501 U.S. at 748-50; Harris v. Reed, 489 U.S. 255, 262 (1989); Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005). To establish a fundamental miscarriage of justice, a habeas petitioner must show that a constitutional violation probably resulted in his conviction despite his actual innocence. United States v. Olano, 507 U.S. 725, 736 (1993) ("In our collateral-review jurisprudence, the term 'miscarriage of justice' means that the defendant is actually innocent."); Sweet v. Bennett, 353 F.3d 135, 141 (2d Cir. 2003) ([A] "habeas petitioner may avoid [a procedural] default . . . by showing . . . that failure to consider the claim will result in miscarriage of justice, i.e., the petitioner is actually innocent.").

Here, the New York Supreme Court rejected the claims petitioner made in his motion to vacate, including his lack of

probable cause claim, his "bona fide complainant affiant" claim, and his prosecutorial ethics claim, finding that petitioner "could have raised each of these claims upon appeal, as they are apparent from the face of the record," and citing New York Criminal Procedure Law Section 440.10(2)(c),[9] which precludes motions to vacate based on claims that could have been raised on direct review (Decision, dated Feb. 28, 2008, annexed as Exhibit H to Opp'n Decl., at 3-4).

Because the Appellate Division and the Court of Appeals both subsequently denied petitioner leave to appeal without opinion, People v. Ely, 2008 N.Y. Slip Op. 76499(U)(1st Dep't Jun. 26, 2008); People v. Ely, supra, 11 N.Y.3d at 736, 894 N.E.2d at 658, 864 N.Y.S.2d at 394, the New York Supreme Court was the "last state court rendering a judgment" on this claim. Harris v. Reed, supra, 489 U.S. at 262; see Ylst v. Nunnemaker,

---

[9] New York Criminal Procedure Law Section 440.10(2)(c) provides that a court must deny a motion to vacate a judgment when:

> Although sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant`s unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him.

501 U.S. 797, 803 (1991)("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim [are presumed to] rest upon the same ground.").  Thus, the New York Supreme Court's rejection of petitioner's claims gives rise to a procedural bar to federal habeas review.

There can be no question that New York Criminal Procedure Law Section 440.10(2)(c) constitutes an adequate and independent ground for the denial of petitioner's claims.  Clark v. Perez, 510 F.3d 382, 393 (2d Cir. 2008); Aparicio v. Artuz, 269 F.3d 78,  93; Davis v. Mantello, 42 F. App'x 488, 490 (2d Cir. 2002); Felton v. Muzzuca, 98 Civ. 4567 (RJS), 2012 WL 4462009 at *7 (S.D.N.Y. Sept. 27, 2012)(Sullivan, D.J.).

Petitioner could overcome this procedural bar by demonstrating either (1) cause for and prejudice from petitioner's failure to assert his claim in accordance with state procedural law or (2) that a failure to consider the claim would result in a fundamental miscarriage of justice.  Schlup v. Delo, supra, 513 U.S. at 324-27; Coleman v. Thompson, supra, 501 U.S. at 748-50; Harris v. Reed, supra, 489 U.S. at 262; Green v. Travis, supra, 414 F.3d at 294.  Petitioner has not, however, even attempted to meet either standard.

Accordingly, petitioner's lack of probable cause claim, his "bona fide complainant affiant" claim, and his prosecutorial ethics claim should be dismissed as procedurally barred.

### C.  Petitioner's Other Non-Cognizable State Law Claims

Petitioner's remaining claims do not provide a basis for habeas corpus relief because they allege violations of state law and do not allege a violation of any federally protected right.

It is fundamental that habeas corpus relief is available in federal court only when an individual is incarcerated in violation of a federally protected right.  28 U.S.C. § 2254(a); Swarthout v. Cooke, --- U.S. ---, ---, 131 S.Ct 859, 861 (2011)("The habeas statute unambiguously provides that a federal court may issue a writ of habeas corpus to a state prisoner only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." (internal quotation marks omitted)); Howard v. Walker, 406 F.3d 114, 121 (2d Cir. 2005)(noting that a claim that a conviction was obtained in violation of state law is not cognizable in federal court); see also Adams v. Greiner, 02 Civ. 6328 (GEL), 2004 WL 912085 at *2 (S.D.N.Y. Apr. 29, 2004)(Lynch, D.J.)("Habeas corpus is not an

extension of the appeals process in the state court.  Rather, it is a remedy for violations of a defendant's rights under the federal constitution, and a very narrow remedy at that.").  Violations or errors of state law or procedure generally do not constitute grounds for habeas review.  Swarthout v. Cooke, supra, 131 S.Ct at 861; Estelle v. McGuire, 502 U.S. 62, 68, citing Lewis v. Jeffers, 497 U.S. 764, 780 (1990) and Pulley v. Harris, 465 U.S. 37, 41 (1984).

        1.    Juror
            Misconduct Claim

Petitioner claims that the court erroneously failed to discharge a juror who was making faces at him, in violation of New York Criminal Procedure Law Section 270.35 (Pet. Mot. to Amend at 6).  However, such a claim is purely one of state law, and is thus not cognizable on federal habeas corpus review.  Faria v. Perez, 04-CV-2411 (RRM), 2012 WL 3800826 at *11-*12 (E.D.N.Y. Sept. 2, 2012) (allegedly sleeping juror); Linnen v. Poole, 766 F. Supp. 2d 427, 469 (W.D.N.Y. 2011) ("Habeas courts in this Circuit have routinely rejected claims that a trial court improperly delegated its duties under C.P.L. § 270.35 on the basis that such claims involve only a matter of state procedural law and do not present a federal constitutional question.");

Williams v. LaClair, 08 Civ. 11354 (SAS)(JCF), 2010 WL 129810 at *4 (S.D.N.Y. Jan. 13, 2010)(Scheindlin, D.J.)(adopting Report & Recommendation of Francis, M.J.).

Thus, petitioner's juror misconduct claim cannot provide a basis for habeas corpus relief.[10]

2.   Improper
     Fines Claim

Petitioner also claims that certain mandatory fees, totaling $210.00, were imposed on him in violation of New York Criminal Procedure Law Section 400.30, which requires fines to be based upon the gain or benefit that the defendant derived from the crime (Petition 8).  Plainly, this claim is purely one of state law, and is thus not cognizable on habeas corpus review.

───────────────

[10] It is also likely that petitioner's juror claim is moot, given that, during petitioner's trial, defense counsel withdrew any objection as to the alleged misbehaving juror:

> [DEFENSE]: Judge, I have had discussions with the defendant regarding the juror who he though might have made a face at him at one point.
>
> After yesterday's session, she appeared to be – we are not making any application as to her.  We are satisfied with her as a sworn juror.
>
> We are not asking that she be relieved, removed. I am sorry.

(Tr. at 177-78).

Additionally, "[s]ince petitioner is not 'in custody' because of his non-payment, or inability to pay, the mandatory assessment fee, habeas corpus relief is unavailable." <u>Hendricks v. Senkowski</u>, 92 Civ. 320 (LBS), 1993 WL 33417 (S.D.N.Y. Feb. 4, 1993)(Sand, D.J.), <u>citing</u> 28 U.S.C. § 2254(a).

Thus, petitioner's fees claim cannot serve as a basis for habeas corpus relief.[11]

IV.  <u>Conclusion</u>

Accordingly, for all the foregoing reasons, I respectfully recommend that the petition be denied in all respects.

In addition, because petitioner has not made a substantial showing of the denial of a constitutional right, I also recommend that a certificate of appealability not be issued.  28

---

[11] The claim is also without merit.  As the New York Supreme Court explained:

> CPL 400.30 requires the sentencing court to hold a hearing in order to determine the extent of the gain prior to imposing the fine.  The mandatory surcharge and crime victim assistance fee are not fines within the meaning of CPL 400.30, however, and have nothing to do with the amount of gain that a defendant may have derived.  They are, rather, fixed fees which are set by statute (see Penal Law 60.35).  The statute does not require the sentencing court to hold a hearing prior to imposing the fees.

(Decision, dated Feb. 15, 2008, annexed as Exhibit I to Opp'n Decl., at 1-2).

U.S.C. § 2253.  To warrant the issuance of a certificate of appealability, "petitioner must show that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Middleton v. Attorneys Gen., 396 F.3d 207, 209 (2d Cir. 2005) (per curiam) (citation and internal quotation marks omitted); see also Love v. McCray, 413 F.3d 192, 195 (2d Cir. 2005) (per curiam).  For the reasons set forth above, I conclude that there would be no difference of opinion among reasonable jurists that petitioner's federal rights were not violated.

I further recommend that certification pursuant to 28 U.S.C. § 1915(a)(3) not be issued because any appeal from this Report and Recommendation, or any Order entered thereon, would not be taken in good faith.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).

## V.  Objections

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections.  See also Fed.R.Civ.P. 6(a).  Such objections (and responses thereto) shall be filed with the Clerk of the Court,

with courtesy copies delivered to the Chambers of the Honorable
Ronnie Abrams, United States District Judge, 500 Pearl Street,
Room 620, and to the Chambers of the undersigned, 500 Pearl
Street, Room 750, New York, New York 10007. Any requests for an
extension of time for filing objections must be directed to Judge
Abrams. FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT
IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW.
Thomas v. Arn, 474 U.S. 140, 155 (1985); United States v. Male
Juvenile, 121 F.3d 34, 38 (2d Cir. 1997); IUE AFL-CIO Pension
Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank
v.Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair
Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714
F.2d 234, 237-238 (2d Cir. 1983).

Dated:  New York, New York
        October 18, 2012

                                    Respectfully submitted,


                                    _____
                                    HENRY PITMAN
                                    United States Magistrate Judge


Copies mailed to:

Mr. Lance Ely (# 03-A-6468)
Clinton Correctional Facility
P.O. Box 2000
Dannemora, New York  12929


                              60

Lisa E. Fleischmann, Esq.
New York State Office of the Attorney General
120 Broadway
New York, New York   10271